490 P.2d 897

**Keith ANDERSON, Plaintiff and Respondent,**

**v.**

**PLEASANT GROVE IRRIGATION COMPANY et al., Defendants and Appellants.**

**No. 12005.**

Supreme Court of Utah.

Nov. 19, 1971.

Clifford L. Ashton and Charles L. Maak, of VanCott, Bagley, Cornwall & McCarthy, Salt Lake City, for defendants and appellants.

J. Brent Wood and Richard S. Dalebout, of Frazier & Wood, Provo, for plaintiff and respondent.

HENRIOD, Justice:

Appeal by defendants from a judgment in a case sounding in negligence allegedly resulting in a flooding of plaintiff's property. Affirmed with costs to plaintiff. This, because we conclude that, contrary to defendants' urgence that there was no material evidence to support the judgment, we believe that there was, which obligates us, under familiar concepts of appellate review, to sustain the arbiter of the facts if there is any substantial, believable and admissible evidence favoring his studied conclusion.

Such facts fairly may be abstracted as follows: The defendant company delivered water to its stockholders under the direction and supervision of the defendant Gillman,—its 24-hour-a-day watermaster who notified the shareholders of the time for their "turns" at using the water. Plaintiff was not a stockholder nor a user of the company's water, part of which ran in front of his property in a ditch used by the company for its transportation. The plaintiff said that two days before the flooding in question, he himself averted a flood that was lapping at his garage, and that thereupon he had called Gillman and advised him of the situation, in what appears to have been a suggestion born of frustration and unrequitable irritation, that legal action would be indulged if there were any further flooding problem. There had been some before, about which Gillman had

cognizance. Two days later a neighbor called plaintiff in the wee hours of the morning, apprising him of the happy circumstance that his basement, without benefit of any reveille, unceremoniously was being inundated. Testimony was admitted to the effect that a heavy volume of water overflowed headgates and culverts upstream which had been unparalleled for many years and which was,—as one put it, —"fantastic." Other evidence, if believed, reflected an overcapacity flow considerably in excess of that which the company and Mr. Gillman knew might well damage one's property below,—all of which might have been avoided if a duty to close the main headgate at point of origin had been employed. Other related facts pointing to compensable negligence could be pointed up, which would serve no useful purpose save for cumulative effect.

Defendants earnestly contend that neither the company nor its servant, Mr. Gillman, had any duty to see where the water went, since that was the duty of the stockholders, after notice of their "turns" was given them. They admit the damage but not any liability because one of its shareholders, who may have been dead for aught we know, did not take his "turn"— but passed the water. We cannot subscribe to such contention, since it connotes some kind of concept that an irrigation company and its watermaster may indulge the luxury of inoculation against liability by the simple

device of sending a registered or unregistered letter, or by making a telephone call, if you please, to its stockholders. Also it seems to say that a primary duty not to injure others can be dissipated by an unwarranted and unlegal delegation of that obligation in order to immerse one with holy water rather than that which may drown oneself. So saying, we are constrained to flee from the scholarly rhetoric of the parties here that touches upon the fine distinctions between "res ipsa loquitur" and "negligencia" lest we indulge in the world of "ad infinitum."

CALLISTER, C. J., and TUCKETT, ELLETT and CROCKETT, JJ., concur.